UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| RONNIE DONTELL DRANE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:11-CV- 261 PPS |
| | ) | |
| SUPERINTENDENT, | ) | |
| | ) | |
| Respondent. | ) | |

## OPINION AND ORDER

Ronnie Dontell Drane, a *pro se* prisoner, is serving an 85-year sentence for a rape and murder committed in Lake County. *Drane v. State*, No. 45G03-01410-MR-012. He has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (DE 1.) But because I find that the petition is untimely, I need not address the merits.

## FACTUAL BACKGROUND

I presume the facts set forth by the state court are correct, and it is Drane's burden to rebut this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here's how the Indiana Supreme Court summarized the facts in its opinion in the direct appeal:

Tomorra "Precious" Taylor and her cousin Adrian Ross spent the afternoon of May 27, 2002, together visiting friends and family in Gary, Indiana. They stopped at Steve Chatfield's home, and Taylor borrowed Chatfield's phone to call Ronnie Drane. Taylor later stopped at a gas station to make a telephone call, and shortly after she completed the call, a man driving a "silver van" with "nice rims" arrived. Taylor left Ross and climbed into the passenger seat of the van to talk to the male driver. Taylor shortly returned to her car, and she and Ross continued visiting friends and family.

At about 8 p.m., Taylor and Ross went to the home of Taylor's foster mother, Chinese Lofton. Taylor placed several more telephone calls to Drane and made arrangements to meet him that night. Taylor's last conversation with Drane was at 9:47 p.m.; shortly thereafter, Taylor left Lofton's home alone.

Between 11:00 and 11:30 p.m., off-duty Gary Police Corporal John Jones noticed a "gray or silver mini-van" parked in M.C. Bennett Park near the barbecue shelters. The van stood out because the park closed after sunset, and park police were supposed to make sure the park was empty. Corporal Jones testified that the van had "elongated taillights," or in other words, lights "[o]n the rear driver and passenger side [that] start pretty much at the top and go down to almost the bumper." Two to three hours later, on his way home, Corporal Jones saw what appeared to be the same van parked in the same spot.

At about 9 a.m. the next morning, a man collecting cans in the park found Taylor's body in a shelter close to the location where Corporal Jones saw the van the previous night. Taylor's body was face down, and her legs were spread open. Her blue jean skirt was pulled up so that her genitalia were visible. Her shoes were strewn about a nearby picnic table. Taylor had several injuries, including a bruised and lacerated lower lip, abrasions on her ear, left jaw, and upper back, a fractured bone in her neck, and a large bruise on her upper right thigh. The coroner concluded strangulation was the cause of death.

Detectives found Drane after they traced phone calls Taylor made and received on the night she was killed. Those calls first led them to Tiffany Copeland's home. Detectives soon learned Drane lived with Copeland and used a cellular phone registered in Copeland's name. Copeland's home was about one mile from the park where Taylor's body was discovered. While detectives were speaking with Copeland, they noticed a silver van at the house next door, seemingly a match with the descriptions given by Corporal Jones and Ross. The van was registered in Copeland's name, but driven by Drane.

When Corporal Jones was shown pictures of Copeland's van at trial, he testified that the van in the pictures was likely the same van he saw in the park on the night of Taylor's murder. Similarly, when Ross viewed pictures of Copeland's van at trial, she testified that the van looked like the same van that she and Taylor encountered at the gas station on the afternoon preceding Taylor's murder.

Tests of DNA samples found on vaginal cervical swabs and external genital swabs obtained from Taylor's body revealed that Drane could not be excluded as a contributing source. In fact, Drane admitted during his case-in-chief that he had unprotected sexual intercourse with Taylor on the night of her murder. He claimed, however, that he and Taylor had consensual sex at his home, that she left shortly after midnight, and that he never saw her again.

*Drane v. State*, 867 N.E.2d 144, 145-46 (Ind. 2007).

In January 2005, Drane was convicted of rape and murder following a bench trial, and was sentenced to an aggregate term of 85 years in prison. *Id.* at 146. He appealed, challenging the sufficiency of the evidence. *Id.* The Indiana Court of Appeals reversed his convictions. *Id.* However, the Indiana Supreme Court granted the state's petition to transfer and on May 29,

2007, affirmed his convictions. *Id.* at 148. Drane did not seek review in the U.S. Supreme Court.[1] (DE 1 at 1.)

On May 12, 2008, Drane filed a post-conviction petition in state court alleging ineffective assistance of trial and appellate counsel on various grounds. (*See* DE 6-1 at 3; DE 6-8 at 29-37.) Following an evidentiary hearing at which Drane's trial and appellate counsel testified, the court denied the petition. (DE 6-8 at 29-37.) Drane appealed, and the Indiana Court of Appeals affirmed the denial of post-conviction relief. *Drane v. State*, No. 45A03-0912-PC-600 (Ind. Ct. App. Oct. 12, 2010). The Indiana Supreme Court denied Drane's petition to transfer on February 17, 2011. (DE 6-5 at 5.) Drane did not seek review in the U.S. Supreme Court. (*See* DE 1 at 1.)

On June 22, 2011, Drane tendered his federal petition to prison officials for mailing. (DE 1 at 7.) In the petition he raises four claims: (1) the evidence was insufficient to support his convictions; (2) his trial counsel was ineffective in failing to adequately investigate the crime scene; (3) his appellate counsel was ineffective in failing to raise certain arguments on direct appeal; and (4) the Indiana Supreme Court violated "double jeopardy" principles by affirming his convictions after they were reversed by the Indiana Court of Appeals. (DE 1 at 2-6.)

## DISCUSSION

The respondent argues that the petition is untimely and must be dismissed. (DE 7.) Drane's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty

---

[1] During the pendency of his appeal, Drane was convicted of committing two unrelated murders in Indiana, and is serving a 65-year sentence imposed in that case. *See Drane v. State*, 891 N.E.2d 671, 2008 WL 2894368 (Ind. Ct. App. July 29, 2008) (unpublished).

Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA contains a strict one-year statute of limitations, stated as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d).

Drane's claims do not implicate newly discovered evidence or a newly recognized constitutional right, nor does he claim that a state-created impediment prevented him from filing his federal petition on time. Under 28 U.S.C. § 2244(d)(1)(A), Drane's conviction became final when the time for seeking review in the U.S. Supreme Court expired on August 27, 2007. *See Powell v. Davis*, 415 F.3d 722, 726 (7th Cir. 2005). He had one year from that date to seek federal habeas relief, absent any period of tolling.

Drane filed his post-conviction petition in state court on May 12, 2008; by this time 259 days had elapsed on the federal clock. The filing of the petition tolled the deadline under 28 U.S.C. § 2244(d)(2), and the deadline remained tolled until the post-conviction proceedings came to a conclusion on February 17, 2011. So when Drane's state court post conviction

4

proceedings came to an end on February 17, 2011, Drane had 106 days remaining to seek federal habeas relief. Unfortunately, he filed the present petition on June 22, 2011 – 124 days after the Indiana Supreme Court's decision. Therefore, his petition was untimely by several days. *See e.g. Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008); *Morales v. Boatright*, 580 F.3d 653, 657 (7th Cir. 2009) (discussing how the statute of limitations starts to run when the state court direct review is over, is tolled when the state court post conviction relief proceedings are pending, but starts again when they end). While it may seem harsh, even a petition that is one day late, is still too late. *Johnson v. McBride*, 381 F.3d 587 (7th Cir. 2004). The line has to be drawn somewhere.

Drane does not dispute that his habeas petition was untimely, and instead argues that he is entitled to equitable tolling. (DE 13-1 at 4-7.) Equitable tolling is a common law doctrine that may be applied to excuse an untimely filing if the petitioner can establish that he pursued his rights diligently but was prevented from filing on time due to some extraordinary circumstance that stood in his way. *Holland v. Florida*, 560 U.S.— , 130 S. Ct. 2549, 2562-63 (2010); *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). Equitable tolling is sparingly granted and is reserved for truly extraordinary circumstances. *See Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008).

Drane argues that he is entitled to tolling because the prison was on periodic lock-down between October 2009 and May 2010, which disrupted his access to the law library. (DE 13-1, at 5.) By his count he did not have access to the law library for 58 days during this period, and he argues that these days should not be counted toward the deadline. (*Id.*) This argument is unavailing. As a general matter, a prisoner's limited access to the law library does not warrant equitable tolling. *Tucker*, 538 F.3d at 735 (prisoner's limited legal resources did not constitute

5

extraordinary circumstances warranting equitable tolling); *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006) (limited access to law library did not warrant equitable tolling). Furthermore, by Drane's own account, the most recent lock-down occurred in May 2010, more than a year prior to the date his federal petition was due. Drane has not established that disrupted access to the law library in 2009 and 2010 prevented him from filing a timely federal petition in June 2011. Accordingly, the petition must be dismissed as untimely.

Pursuant to RULE 11 OF THE RULES GOVERNING SECTION 2254 CASES, I must either issue or deny a certificate of appealability in all cases where I enter a final order adverse to the petitioner. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quote marks and citation omitted). When the petitioner's claim is dismissed on procedural grounds, the determination of whether a certificate of appealability should issue has two components. *Id.* at 484–85. First, the petitioner must show that reasonable jurists would find it debatable whether the procedural ruling was correct. *Id.* at 484. Next, the petitioner must show that reasonable jurists would find it debatable whether the petition states a valid claim for denial of a constitutional right. *Id.* Each is a threshold inquiry; thus, I need only address one component if that particular component will resolve the issue. *Id.* at 485.

As is fully explained above, Drane's petition is untimely. Although Drane only missed the deadline by several days, he has not provided grounds for excusing the untimeliness of the

6

petition, which precludes me from reaching the merits. Nothing before me suggests that jurists of reason could debate the correctness of this procedural ruling or find a reason to encourage Drane to proceed further. Accordingly, I will deny Drane a certificate of appealability.

For these reasons, the court **DISMISSES** the petition (DE 1) as untimely and **DENIES** the petitioner a certificate of appealability.

**SO ORDERED**.

ENTERED: June 4, 2012

s/ Philip P. Simon  
PHILIP P. SIMON, CHIEF JUDGE  
UNITED STATES DISTRICT COURT